[Counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| SYNCHRONOSS TECHNOLOGIES, INC., <br><br>                  Plaintiff, <br><br>    v. <br><br> EGNYTE, INC. <br><br>                  Defendant. | Case No. 4:16-cv-00120-HSG <br><br> **STIPULATION & ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR PATENT LITIGATION** <br><br> Hon. Haywood S. Gilliam, Jr. |

Upon the stipulation of the parties, the Court ORDERS as follows:

This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1."

1. **General Provisions.**

    a.    This Order may be modified in the Court's discretion or by stipulation.

    b.    As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

    c.    A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

    d.    The parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines").

    e.    **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

    f.    Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

2. **Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

    a.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

b. Absent a showing of good cause by the requesting party, the categories of ESI identified in **Schedule A** attached hereto need not be preserved. Furthermore, the Parties shall have no obligation to preserve, collect, review, or produce the following ESI: (1) all file types on National Institute of Standards and Technology (NIST) database of software applications; (2) all executable files; (3) all system and program files as defined by the NIST library; and (4) all files in the C:\Windows directory (e.g., LOG, DAT, etc. files).

**3. Privilege.**

a. The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

b. With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

c. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

d. The rules and procedures governing the inadvertent disclosure of privileged, work-product-protected documents or otherwise protected materials are outlined in the stipulated protective order governing this case. The inadvertent production of a privileged or work product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.

**4. Initial Disclosures.** Pursuant to the Scheduling Order or agreement of the parties, each party shall disclose:

a. **Custodians.** Up to 10 custodians per party most likely to have discoverable information in their possession, custody or control. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.

b. **Non-custodial data sources.** A list of the non-custodial data sources that are

most likely to contain non-duplicative discoverable information for preservation and production consideration.

  c. **Notice.** The parties shall identify any issues relating to:

    1) Any additional sources of ESI not identified in Schedule A (by type, date, custodian, electronic system or other criteria) that a party asserts are not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

    2) Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

    3) Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

**5. Specific E-Discovery Issues.**

  a. **On-site inspection of electronic media.** Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause. Nothing in this provision shall prevent a party from voluntarily allowing inspection of source code without the Court's leave.

  b. **Email Production.** General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

  c. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

  d. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

4

e.    Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth herein and in the Guidelines.

f.    Each requesting party shall limit its email production requests to a total of five (5) custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

g.    Each requesting party shall limit its email production requests to a total of five (5) search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

h.    **Search methodology.**

5

1          1)      Nothing in this Order shall require a producing party to utilize any

particular collection protocol for any particular population of ESI or entire ESI data source.  For

avoidance of doubt, targeted collection may be used to collect potentially relevant documents

from an ESI data source.

          2)      If the producing party elects to use search terms to locate potentially

responsive ESI, it shall disclose a list of search terms to the requesting party.  Absent a showing

of good cause, a requesting party may request no more than 10 additional terms to be used in

connection with the electronic searches conducted by the producing party per discovery track.

Focused terms, rather than over-broad terms (*e.g.*, product and company names), shall be

employed.  The parties shall meet and confer on excluding information that is not discoverable

under Fed. R. Civ. P. 26(b), including modifying terms where the burden or expense of the

proposed terms outweighs the likely benefit.

          3)      Each party is required to produce only a single copy of a responsive

document and each party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash

values at the document level) across custodians.  For emails with attachments (to the extent the

parties agree or are ordered to produce emails), the hash value is generated based on the

parent/child document grouping.  To the extent that de-duplication through MD5 or SHA-1 hash

values is not possible, the parties shall meet and confer to discuss any other proposed method of

de-duplication.

          4)      In an email thread, only the final-in-time document need be produced,

assuming that all previous emails in the thread are contained within the final message.  Where a

prior email contains an attachment, that email and attachment shall not be removed as a "near-

duplicate," unless an identical copy of the attachment is contained in the subsequent-in-time

version of the email thread that is being produced.

      i.     **Format.**  ESI and non-ESI shall be produced to the requesting party in the

formats described in **Schedule B**.  When a text-searchable image file is produced, the

producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting,

the metadata (as noted below in Schedule B) and the revision history as shown within a document management system ("DMS"), if applicable. Each Party reserves the right to object to production of documents in the format specified herein to the extent that production in such format is impracticable or unreasonably burdensome or expensive.

j.       Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery. Such topics should be discussed pursuant to the District's E-Discovery Guidelines.

k.       **Source Code.** No provision of this Order affects any inspection of source code that is responsive to a discovery request and may be made available consistent with the protective order governing this case.

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: 4/10/17

_____
HON. KANDIS A. WESTMORE
UNITED STATES MAGISTRATE JUDGE

**IT IS SO STIPULATED.**

Dated this 31 day of March, 2017.

/s/ Sarah S. Eskandari
SARAH S. ESKANDARI (SBN 271541)
DENTONS US LLP
One Market Plaza,
Spear Tower, 24th Floor
San Francisco, CA 94105
Telephone: (415) 267-4000
Facsimile: (415) 267-4198
Email: sarah.eskandari@dentons.com

MARK L. HOGGE (*pro hac vice*)
SHAILENDRA K. MAHESHWARI
(*pro* hac *vice*)
NICHOLAS H. JACKSON (SBN 269976)
DENTONS US LLP
1900 K Street, N.W.
Washington, DC 20006
Telephone: (202) 408-6400
Facsimile: (202) 408-6399
Email: mark.hogge@dentons.com
Email: shailendra.maheshwari@dentons.com
Email: nicholas.jackson@dentons.com

JOEL N. BOCK (*pro hac vice*)
DENTONS US LLP
101 JFK Parkway
Short Hills, New Jersey 07078-2708
Telephone: (973) 912-7100
Facsimile: (973) 912-7199
Email: joel.bock@dentons.com

*Attorneys for Plaintiff*
*Synchronoss Technologies, Inc.*

Dated this 31 day of March, 2017.

/s/ Ryan T. Beard
Ryan T. Beard (Pro Hac Vice)
Dwayne K. Goetzel (Pro Hac Vice)
Meyertons, Hood, Kivlin, Kowert & Goetzel,
P.C.
1120 S. Capital of Texas Hwy.,
Building 2, Suite 300,
Austin, Texas 78746
Direct Dial: (512) 853-8833
Facsimile: (512) 853-8801
Email: rbeard@intprop.com

Neil A. Smith (SBN 63777)
RIMON P.C.
One Embarcadero Center, Suite 400
San Francisco, CA 94111
Phone: (415) 377-9280
Facsimile: (800) 930-7271
Email: neil.smith@rimonlaw.com

*Attorneys for Defendant*
*Egnyte, Inc.*

# SCHEDULE A

1.      Deleted, slack, fragmented, or other data only accessible by forensics.

2.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.      On-line access data such as temporary internet files, history, cache, cookies, and the like.

4.      Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5.      Automatically saved versions of documents and emails, where a final version of said document has been saved and is otherwise discoverable.

6.      Back-up data that are substantially duplicative of data that are more accessible elsewhere.

7.      Electronic mail or pin-to-pin messages stored on mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

8.      Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

9.      Logs of calls made from mobile devices.

10.     Server, system, network, or transactional logs.

11.     Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

12.     Data remaining from systems no longer in use that is unintelligible on the systems in use.

13.     System data that are typically overwritten in the normal course of business.

**SCHEDULE B**

**PRODUCTION FORMAT AND METADATA**

1. **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.dat) and an image load file that can be loaded into commercially acceptable production software (*e.g.*, Concordance and Relativity).

2. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3. **Metadata Fields and Metadata File.** The parties are only obligated to provide the following metadata for all ESI produced to the extent such metadata exists. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, and POD. The metadata file shall be delimited according to the following characters:

   - Delimiter = ¶ (ASCII:020)
   - Text-Qualifier = þ (ASCII:254)
   - New Line = ® (ASCII:174)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| POD | Confidentiality designation |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated. |
| CUSTODIAN_ALL | Semi-colon delimited list of all custodians associated with the file. |
| SUBJECT | Subject line of email |
| TITLE | Title field extracted from the metadata of a non-email |

| | | |
|---|---|---|
| | | document |
| | DATESENT | Date email was sent (format: MM/DD/YYYY) |
| | DATERCVD | Received date of an email message (format: MM/DD/YYYY) |
| | DATECREATED | Date that a file was created (format: MM/DD/YYYY) |
| | DATEMODIFIED | Modification date(s) of a document |
| | MODIFIEDBY | The name of the person who modified a document |
| | AUTHOR | Author field extracted from the metadata of a non-email document |
| | TO | All recipients that were included on the "To" line of the email |
| | FROM | The name and email address of the sender of the email |
| | CC | All recipients that were included on the "CC" line of the email |
| | BCC | All recipients that were included on the "BCC" line of the email |
| | NATIVELINK | Native File Link (Native Files only) |
| | FILENAME | Filename of the original digital file name |
| | PRODVOLUME | Identifies production media deliverable |
| | REDACTED | "Yes," for redacted documents; otherwise, blank |
| | EXTRACTEDTEXT | File path to Extracted Text/OCR File |

4. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

5. **Color Documents.** Documents containing color as they are maintained in the ordinary course of business should be produced in color.

6. **Text Files.** A single multi-page (document-level) text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

7. **Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

8. **Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

9. **Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

10. **Spreadsheets.** TIFF images of databases, spreadsheets, or presentation slides (e.g. PowerPoint, MS Excel, Google Sheets, Access, Microsoft projects, etc.) need not be produced unless redacted, in which instance, spreadsheets may be produced in TIFF format with OCR Text Files. Native copies of databases, spreadsheets or presentation slides shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Paragraph 3. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a spreadsheet has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text. The parties will make reasonable efforts to ensure that any spreadsheets that are produced only as TIFF images are formatted so as to be readable.

11. **Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

12. **Request(s) for Additional Native Files.** If good cause exists to request production of certain files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Paragraph 3. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.