United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNCHRONOSS TECHNOLOGIES, INC., <br> Plaintiff, <br> v. <br> EGNYTE, INC., <br> Defendant. | Case No. 4:16-cv-00120-HSG (KAW) <br> **ORDER RE: JOINT DISCOVERY LETTER BRIEF** <br> Re: Dkt. No. 133 |

On December 17, 2018, Plaintiff Synchronoss Technologies, Inc. and Defendant Egnyte, Inc. filed a joint discovery letter. (Joint Letter, Dkt. No. 133.) In the joint letter, Plaintiff seeks to compel documents responsive to Requests for Production Nos. 18 and 27. *Id.* at 1.

Upon review of the joint letter, the Court orders Egnyte to provide supplemental responses to the requests for production, as set forth below, within 14 days of this order.

## I. LEGAL STANDARD

The Federal Rules of Civil Procedure broadly interpret relevancy, such that each party has the right to the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Discovery need not be admissible to be discoverable. *Id.* The court, however, "must limit the frequency or extent of discovery otherwise allowed" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Furthermore, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense," including by precluding discovery, by conditioning disclosure or discovery on specified terms, by preventing inquiry into certain matters, or by limiting the scope of discovery to certain matters. Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## II. DISCUSSION

### A. Request No. 18

Request No. 18 seeks "[a]ll documents and things relating to Egnyte's customers, distributors, and sales agents, with respect to the Accused Products." (Joint Letter at 1.) The parties dispute whether Egnyte must produce approximately 15,000 customer agreements relating to the Accused Products. *Id.* at 2.

Synchronoss contends that Egnyte's document production has been "grossly deficient," as Egnyte has only produced about 400 documents and source code files. *Id.* at 2-3. Synchronoss asserts that the customer agreements are "critical for proving up patent infringement and in establishing an appropriate damages theory in this case," because the agreements relate to the reasonable royalty, or the "hypothetical negotiation" between the parties, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Id.* at 2.

On October 23, 2018, the parties met and conferred, and Synchronoss agreed to limit the scope of the request to the customer agreements at issue. *Id.* On November 30, 2018, Egnyte represented that the vast majority of customers sign a standard customer agreement, and a few have minor edits, so it would not produce the approximate 15,000 customer agreements, unless Synchronoss incurred the expense of production. *Id.* Synchronoss declined, but was willing to limit its request if Egnyte provided a list of customers who have executed the standard agreements and those who have not, so Synchronoss would be able to determine which additional documents should be produced. *Id.* at 2-3. To date, Egnyte has only produced a single customer agreement with T-Mobile. *Id.* at 3. Egnyte has not produced its standard agreement, and has not identified those customers who have executed the standard agreements versus those who have not. *Id.*

2

In response, Egnyte argues that the request is overbroad because it calls for the production of approximately 15,000 customer agreements, "most of which are the standard customer agreement used by Egnyte." (Joint Letter at 3.) That is, "the exact same customer agreement would be produced with only [the] name of the customer changed" and in other cases, "there may be slight modifications to the customer agreement (*e.g.*, the termination provisions may be modified)…." *Id.*

Additionally, Egnyte argues that producing all 15,000 customer agreements would likely be "a six-figure expense," because it would have to perform a manual search. *Id.* Egnyte is willing to produce all customer agreements if Synchronoss bears the costs of production, but Plaintiff declined. *Id.* Egnyte also offered to produce customer agreements for specific customers, but Synchronoss rejected that offer of compromise. *Id.* Egnyte has already produced the T-Mobile customer agreement, which is "an example of [a] customer agreement and is the type of customer that Synchronoss has previously identified as important to the case (*i.e.*, a customer in the telecommunications carrier field.)" *Id.* Egnyte does not address the fact that it has not produced the standard agreement as part of the meet and confer process.

Upon consideration of the arguments raised by the parties, the Court finds that Synchronoss has not met its burden of showing that the production of approximately 15,000 customer agreements is proportional to the needs of the case under Rule 26. Indeed, Synchronoss does not address how the financial information for the accused products—which presumably indicate the value of the alleged infringement based on the royalties paid—do not render the production of the standard customer agreement sufficient. Thus, the Court declines to order Egnyte to undertake a costly, manual review of its customer files to produce 15,000 documents, whose "slight" differences are limited to termination provisions. (*See* Joint Letter at 3.) To require such a production would be unduly burdensome. Notwithstanding, Egnyte is ordered to produce its standard customer agreement within 14 days of this order.

**B. Request No. 27**

Request No. 27 seeks "[a]ll documents and things relating to Egnyte's marketing, advertising, or promotion of the Accused Products." (Joint Letter at 1.) The parties dispute

whether Egnyte must produce marketing materials for the Accused Products. *Id.* at 4.

Synchronoss contends that Egnyte has not produced any marketing materials pertaining to the Accused Products. *Id.* Synchronoss believes that marketing materials are relevant to customer demand of the Accused Products and relate to the hypothetical negotiation between the parties required to determine a reasonable royalty rate for damages. *Id.* Synchronoss also argues that Egnyte's marketing materials are relevant to a lost profits analysis. *Id.*

In response, Egnyte argues that its products do not infringe on the Asserted Patents, and that it will file a motion for summary judgment in the near future. (Joint Letter at 4.) This is irrelevant. While Egnyte concedes that it markets its synchronization technology on its website and in other marketing materials, it claims that its customers are only "interested in knowing that Egnyte provides synchronization." *Id.* As a result, technical information is not presented in its marketing materials. *Id.* Egnyte further argues that it has already produced numerous documents relating to its marketing efforts for the Accused Products, and that Egnyte's webpage—its most-used marketing platform— has been publicly available for Synchronoss to access since the complaint was filed. *Id.* at 4-5. To the extent that Synchronoss seeks documents marketing Egnyte's specific synchronization algorithm via the asserted patents, Defendant claims that they do not exist. *Id.* at 5.

Based on the foregoing, the Court is not persuaded that Defendant's website and prior production are sufficient to satisfy its discovery obligation under the federal rules. Specifically, claiming that the website is publicly accessible is unavailing, because websites are easily updated and content can be removed. Accordingly, Egnyte is ordered to provide its supplemental production within 14 days of this order. If certain types of documents do not exist, they obviously need not be produced.

///

///

///

///

///

4

### III. CONCLUSION

For the reasons set forth above, Defendant Egnyte, Inc. is ordered to produce its standard customer agreement and its marketing materials within 14 days of this order.

The parties are reminded of their ongoing obligation to supplement their document productions under Rule 26, should additional, responsive documents be discovered at a later date.

IT IS SO ORDERED.

Dated: January 23, 2019

KANDIS A. WESTMORE
United States Magistrate Judge